## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| DECADE, S.A.C., LLC *et. al.*,[1] | Case No. 18-11668 (CSS) |
| Debtors. | (Jointly Administered) |
| | **Re: Dkt. Nos. 61, 62, 66 & 67** |

## JOINT REPLY OF THE CHAPTER 7 TRUSTEE AND 23 CAPITAL LIMITED (F/K/A XXIII CAPITAL LIMITED) IN SUPPORT OF (I) MOTION TO APPROVE A SETTLEMENT AND (II) APPLICATION TO RETAIN SPECIAL COUNSEL

David W. Carickhoff, the chapter 7 trustee (the "Trustee") of the estates (the "Estates") of the above-captioned debtors (the "Debtors") and 23 Capital Limited (f/k/a XXIII Capital Limited) ("23 Capital") hereby jointly reply (a) in support of (i) the *Motion of Chapter 7 Trustee for Approval of Stipulation by and Between 23 Capital Limited (f/k/a XXIII Capital Limited) and David W. Carickhoff, in his Capacity as Chapter 7 Trustee for the Estates of Decade S.A.C., LLC and Gotham S&E Holding, LLC, Pursuant to 11 U.S.C. § 105(a) and Rule 9019 of the Federal Rules of Bankruptcy Procedure* [Dkt. No. 61] (the "Settlement Motion") and (ii) the *Application for an Order (i) Authorizing the Retention and Employment of Ashby & Geddes, P.A. and Troutman Sanders LLP as Special Counsel to the Chapter 7 Trustee and (ii) Waiving Certain Information Requirements Pursuant to Local Rule 2016-2(h)* [Dkt. No. 62] (the "Retention

---

[1] The Debtors and the last four digits of each Debtors' respective federal Employer Identification Number are: Decade, S.A.C., LLC (8395); Gotham S&E Holdings, LLC (5927); Decade, S.A.C. Contracts, LLC (7243); Decade, S.A.C. II, LLC (5679); Decade, S.A.C. Executives, LLC (9865).

<u>Application</u>") and (b) in opposition to the *Objection* to the Settlement Motion and Retention Application filed by Aaron and Eric Goodwin [Dkt. No. 66] (the "<u>Goodwin Objection</u>").[2]

## **<u>REPLY</u>**

1.      As discussed below, and in the Settlement Motion, the Trustee's settlement with 23 Capital presents the only viable option for a collective remedy in these chapter 7 cases.  After undertaking an investigation and engaging in protracted negotiations, the Trustee's settlement with the Debtors' senior secured lender brings administrative solvency to the Debtors' Estates and a potential recovery to unsecured creditors.  Such a result cannot reasonably be attacked – the Trustee's exercise of his fiduciary duties in these tough cases is beyond cavil and should not be second guessed. *See e.g. Myers v. Martin (In re Martin)*, 91 F.3d 389, 393-395 (3d Cir. 1996) ("[c]ompromises are favored in bankruptcy" and courts generally defer to a trustee's business judgment when there is a legitimate business justification for the trustee's decision.)

2.      By contrast, the Goodwin Objection is an attempt by a significant litigation target to distract the Court from focusing on the merits of a very reasonable settlement.  The many ad-hominem attacks on the Trustee in the Goodwin Objection are unsubstantiated and untrue.  The Goodwins' assertions that the Trustee "sold out" merely to cover current legal costs is insulting and, as discussed more fully below, clearly belied by the facts.

3.      It is nothing short of ironic that the Goodwins have objected as, in their words, the largest unsecured creditor in these cases.  The Goodwins' alleged claims arise from contracts entered into in connection with the Debtors' purchase of the stock of GAME and GSM.  As this Court is aware, the Goodwins argue that the stock purchase transaction is void *ab initio*.  If this

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Settlement Motion and/or the Retention Application, as applicable.

were true, the Goodwins would have no claim against the Estates.[3]  Instead, at a minimum, the Goodwins would owe the Estates the $9.5 million (plus interest) for payments the Debtors made to the Goodwins at closing in connection with the purchase of the GAME and GSM stock – payments the Goodwins concede they received, but that they have not offered to return to the Estates.

## The Settlement Should be Approved

4.     Shortly after his appointment in July, the Trustee instructed his general bankruptcy counsel, Archer & Greiner ("Archer") to investigate the extent, priority and validity of 23 Capital's liens and/or whether the Estates had any viable claims or causes of action against 23 Capital.  Archer thereafter reviewed and analyzed voluminous loan and security documents and determined that 23 Capital held a claim against the Debtors in excess of $25 million, duly and properly perfected by a first priority lien in all the Debtors' assets.

5.     Archer likewise investigated any potential claims or causes of action the Estates may have against 23 Capital, including the counter-claims asserted by the Debtors in the SDNY Litigation.  Ultimately, the Trustee determined that the merits of any potential claims against 23 Capital were speculative at best, would likely bring little value to the Debtors' Estates, and, at the same time, would be prohibitively expensive to prosecute, especially in light of the uncertainty of any results.  In other words, the Trustee, in his reasonable business judgment, determined that the costs and risks of litigating with 23 Capital outweighed any corresponding potential benefit to the Estates.

---

[3] Regardless, the size of the Goodwins' alleged claims is of no moment and cannot provide the Goodwins with veto power over a settlement.  *See e.g. Plaza Equities, LLC v. Pauker (In re Copperfield Inv., LLC)*, 401 B.R. 87, 96 (Bankr. E.D.N.Y. 2009) ("[A] creditor – even a creditor holding the overwhelming majority of claims in the case – [may not] arbitrarily veto a settlement that otherwise satisfies the criteria for approval.").

6.      Faced with these realities, and estates with no assets other than litigation claims, the Trustee exercised his fiduciary duties and – as any good fiduciary would – engaged in negotiations with the senior secured lender.  The negotiations were protracted, at arm's length and resulted in a settlement, with the following key terms:

    a.   A $75,000 upfront payment to the Estates from 23 Capital;

    b.   Allowance of 23 Capital's secured claim at $25 million – which represents a reduction of over $800,000 from the judgment 23 Capital obtained against the Debtors' former management in the SDNY Litigation;

    c.   Investigation and prosecution of the Claims at no cost to the Estates; and

    d.   A Carve-Out in favor of the Estates from any recoveries on the Claims that would otherwise be paid to 23 Capital on account of its secured claim as follows: (i) 10% (on a gross basis) of the first $5 million recovered on account of the Claims;  (ii) 6% (on a gross basis) of the next $5 million recovered on account of the Claims; and (iii) 6% (on a net basis) of the next $15 million.

7.      In essence, the Estates get to share in the upside of any litigation recoveries without incurring any risk or costs.  For example, if recoveries on the Claims reached $10 million, the Estates would receive $875,000 of unencumbered cash to satisfy administrative expenses and make distributions to unsecured creditors.  Even at a more conservative recovery of $5 million, the Estates would receive $575,000 of unencumbered cash.

8.      It is worth noting that the Debtors' schedules reflect an unsecured claims pool (when excluding the claims of the Goodwins and the Debtors' former managers) of approximately $6 million.   None of these creditors have objected to the proposed settlement.

9.      In contrast, absent a settlement with 23 Capital, the Trustee would have to recover in excess of $25 million and fully payoff 23 Capital before the Estates would see a single dollar. Those recoveries would be further minimized by substantial litigation costs, including, in all

likelihood, a significant contingency fee for counsel.[4]  Instead, by the settlement, the Estates get to start sharing in recoveries on Claims from the first dollar collected.

10.      Based on the foregoing, the Trustee submits that the settlement with 23 Capital maximizes value, enables a collective remedy in these cases, and is in the best interest of the Debtors' Estates and, therefore, clearly falls well within the "lowest range of reasonableness" and should be approved.   The Goodwins attempt to "veto" the otherwise approvable settlement is nothing more than a strategic tactic by a clear litigation target and should be dismissed as such. *See e.g. Copperfield Inv., LLC*, 401 B.R. at 96.

## Retention of Special Counsel is Appropriate

11.      As a threshold matter, courts have consistently held that "a bankruptcy trustee is to be afforded wide latitude in their decision on how to best manage the estate, including the propriety of employing a professional." *In re Great Lakes Factors, Inc.*, 337 B.R. 657, 660, (Bankr. N. D. Ohio).  Indeed, "a trustee is generally entitled to select his or her own attorney, without interference from individual creditors and other parties in interest."  *Id.*

12.      Special Counsel is well qualified to handle litigation of the Claims, and the Goodwins do not dispute Special Counsel's qualifications.   Moreover, Special Counsel, in particular Troutman, has substantial historical knowledge on the underlying litigation that other counsel does not possess.   And, perhaps most importantly, the fees and expenses of Special Counsel will not be borne by the Estates.[5]

---

[4] Potentially, the Trustee may have the right to surcharge the collateral under section 506(c) of the Bankruptcy Code, but such surcharge would only be available to pay certain administrative expenses, and creditors would not get any recovery until $25 million was collected.

[5] Several times throughout their Objection, the Goodwins state that Archer or other counsel may be unwilling to prosecute the Claims.  That is not true, but why would the Trustee retain Archer (or other counsel) on a substantial contingency fee basis when Special Counsel will investigate and prosecute the Claims at no cost to the Estates?

13.     Despite the foregoing clear benefits of retaining Special Counsel, in an effort to avoid litigation and blow up the Trustee's value maximizing settlement with 23 Capital, the Goodwins hang their hat on the fact that Special Counsel will represent both the Trustee and 23 Capital.  But, as case law (including at least one case cited in the Goodwin Objection) makes clear, there is no general rule disqualifying a professional based solely on simultaneous representation.  *See e.g. In re Johnson* 312 B.R. 810, 819-20 (Bankr. E.D. Va. 2004)

14.     <u>First</u>, the Trustee is obliged to point out that he is not "surrendering" litigation of the Claims to 23 Capital.  The Trustee will continue to actively pursue the Claims on behalf of the Debtors' Estates with the assistance of Special Counsel.   Indeed, the Stipulation with 23 Capital is very clear on this point.  It provides, among other things, that Special Counsel is being retained to "investigate and prosecute certain claims under the Bankruptcy Code and applicable state law ***on behalf of the Debtors' Estates***" and that Special Counsel "***shall take their direction from the Trustee***." (Stipulation ¶¶ 3-4) (emphasis added).

15.     <u>Second</u>, retention of Special Counsel does not create a conflict of interest. Although 23 Capital is a creditor of the Debtors, its secured claim will be allowed pursuant to the Stipulation, subject to Court approval.  Also, the Trustee has agreed to waive and release any and all claims that the Debtors have (or may have) against 23 Capital.  The fact that the Trustee has (i) through independent counsel (Archer) already analyzed 23 Capital's liens and potential causes of action and (ii) determined to release 23 Capital and allow its secured claim, avoids a conflict of interest and makes the cases cited in the Goodwin Objection distinguishable.

16.     For example, in *In re Ryan-Jones*, general bankruptcy counsel was disqualified from representing both a trustee and the secured lender when the trustee had not yet performed a lien analysis of the secured lender and would have used that same general bankruptcy counsel to

perform the lien analysis.  561 B.R. 380, 383-84 (Bankr. E.D. Va. 2016).  *Ryan-Jones* presents a completely different scenario than the current cases, where the liens have been investigated, the secured lender will be released and Special Counsel will pursue claims against parties other than the secured lender.

17.     The same is true with *In re eToys*, 331 B.R. 176 (Bankr. D. Del. 2005).  In that case, Judge Walrath disqualified a law firm from simultaneously representing both a debtor and a third party against whom the debtor had unresolved claims.  Again, a totally different scenario than here, where 23 Capital's claim is to be allowed and claims against it are to be released by way of settlement.

18.     Moreover, to specifically and proactively address any conflict of interest issues, 23 Capital has agreed that, in the event that it seeks to take a position adverse to the Trustee or the Estates in these chapter 7 cases, 23 Capital will retain alternative conflicts counsel and will not use Special Counsel for such purposes, unless the Trustee subsequently affirmatively agrees otherwise in writing.

19.     Finally, Special Counsel is disinterested.  The Goodwins incorrectly assert in their Objection that part of 23 Capital's secured claim is comprised of Troutman's fees, thereby somehow making Troutman a creditor of the Debtors. This argument, however perplexing, is irrelevant.  No part of 23 Capital's $25 million allowed secured claim is comprised of fees or expenses attributable to Troutman.  As set forth in the *Declaration of Jason Traub* filed by 23 Capital in the SDNY Litigation on July 6, 2018 [SDNY Dkt. No. 248] (the "Traub Declaration"), $1,409,679.05 of 23 Capital's secured claim is attributable to fees and costs 23 Capital "incurred in enforcing its right under the Loan Agreement." (Traub Declaration ¶ 34) However, as evidenced by Exhibit BB of the Traub Declaration, all of those fees and costs are attributable to

7

23 Capital's prior law firm, Loeb & Loeb.[6]

20.      Given the clear benefits, and the lack of conflicts, the Trustee should be afforded the freedom to retain Special Counsel.

**The Goodwins are Not Entitled to Discovery or a Full Evidentiary Hearing**

21.      In a final attempt to delay, the Goodwins seek an opportunity to take unnecessary and inappropriate discovery in connection with the settlement.  However, it is well established that a bankruptcy court "need not conduct an independent investigation into the reasonableness of [a] settlement." *In re Chemtura Corp.*, 439 B.R. 561, 594 (Bankr. S.D.N.Y. 2010)  Nor is it necessary for the court to "conduct a 'mini-trial' on the facts or the merits of the underlying dispute." *Id.*

22.      Indeed, "there is no legal requirement that a bankruptcy court hold an evidentiary hearing before approving a settlement." *Topwater Exclusive Fund III, LLC v. SageCrest II, LLC (In re SageCrest II, LLC)*, 2011 WL 134893, at *10 (D. Conn. Jan. 14, 2011) (citing *Depoister v. Mary M. Holloway Found.*, 36 F.3d 582, 586 (7th Cir. 1994)).  Instead, "in [evaluating a settlement], the court is permitted to rely upon the opinions of the trustee, the parties, and their attorneys." *See In re Adelphia Commc'ns Corp.*, 327 B.R. 143, 159 (Bankr. S.D.N.Y. 2005); *see also O'Connell v. Packles (In re Hilsen)*,404 B.R. 58, 70 (Bankr. E.D.N.Y. 2009) ("The trustee's business judgment plays a role in the settlement of a claim that is property of the chapter 7 bankruptcy estate.").

23.      Here, the analysis of the settlement is simple, and discovery is not necessary.

---

[6] A true and correct copy of the Traub Declaration and Exhibit BB thereto are attached to this Reply as <u>Exhibit A</u>. The Court in the SDNY Litigation relied on the Traub Declaration in entering a judgment against the individual guarantors, the Debtors' former management.

## CONCLUSION

24.     The Trustee has made a reasonable business decision based upon an investigation and protracted arms' length negotiations to settle with the Debtors' senior secured lender. The settlement brings in immediate cash to the Estates, with the potential for the Estates to receive additional unencumbered cash. All without the need for the Estates to incur the significant legal costs otherwise attendant with litigation. Absent settlement, the Trustee's ability to realize a recovery for the Estates would be severely hampered by 23 Capital's large secured claim.

25.     This result maximizes value and ensures a collective remedy in these cases. Accordingly, the Court should overrule the Goodwin Objection and approve the relief requested in the Settlement Motion and the Retention Application.

Dated: October 31, 2018

**ARCHER & GREINER, P.C.**


*/s/ Alan M. Root*
Alan M. Root (No. 5427)
S. Alexander Faris (No. 6278)
300 Delaware Avenue, Suite 1100
Wilmington, DE  19801
Telephone:  (302) 777-4350
Facsimile:  (302) 777-4352
E-mail: aroot@archerlaw.com

*Counsel for the Chapter 7 Trustee*

**ASHBY & GEDDES, P.A.**


*/s/ Karen B. Skomorucha Owens*
William P. Bowden (#2553)
Karen B. Skomorucha Owens (#4759)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, Delaware 19899-1150
Tel: (302) 654-1888
Fax: (302) 654-2067
wbowden@ashbygeddes.com
kowens@ashbygeddes.com

-and-

**TROUTMAN SANDERS LLP**
Hugh M. McDonald, Esq.
Patrick E. Fitzmaurice, Esq.
Jenna C. Hutchinson, Esq.
875 Third Avenue
New York, NY 10022
Tel: (212) 704-6000

9

Fax: (212) 704-6288
hugh.mcdonald@troutman.com
patrick.fitzmaurice@troutman.com
jenna.hutchinson@troutman.com

Andrew B. Buxbaum, Esq.
Troutman Sanders Building
1001 Haxall Point, 15th Floor
Richmond, VA 23219
Tel: (804) 697-1200
Fax: (804) 697-1339
andrew.buxbaum@troutman.com

*Counsel for 23 Capital Limited*